UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
LAWRENCE WAGNER and HAKIM : USDC SDNY
ABDURRAHEEM, : DOCUMENT
 : ELECTRONICALLY FILED
                           Plaintiffs, : DOC #:_____
 : DATE FILED: 9/28/2015
           -against- :
 : 14-CV-2521 (VEC)
CITY OF NEW YORK, individually and in his :
official capacity as Commissioner of the New York : OPINION & ORDER
City Police Department, RAYMOND W. KELLY; :
individually and in her official capacity as :
Commissioner of the New York City Department :
of Correction, DORA B. SCHRIRO; and, :
individually and in their official capacities as New :
York City police officers, JEROME FOY (Shield :
No. 8820) and "JOHN DOE," :
 :
                           Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This case arises from the arrests of Lawrence Wagner and Hakim Abdurraheem, two disabled military veterans who are licensed New York City street vendors, by the New York City Police Department ("NYPD"). Plaintiffs bring claims under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2-101, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against the City of New York (the "City"), the arresting officer, Jerome Foy ("Foy"), former NYPD Commissioner Raymond Kelly ("Kelly") and former New York City Department of Correction Commissioner Dora Schriro ("Schriro").

Plaintiffs have moved for partial summary judgment on their false arrest claims brought pursuant to Section 1983. Defendants have cross-moved for summary judgment on all of Plaintiffs' claims. For the reasons set forth below, Plaintiffs' Partial Motion for Summary

Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Wagner is a disabled military veteran who uses a wheelchair to conduct his daily activities.  Basinski Aff. Ex. A, Wagner Aff. ¶¶ 2, 4.  Plaintiff Abdurraheem is a disabled military veteran who walks with the assistance of a cane.  Basinski Aff. Ex. B, Abdurraheem Aff. ¶¶ 2, 3.  On June 18, 2012, Plaintiffs were working as licensed street vendors at separate tables in the vicinity of Battery Park in Manhattan selling various clothing items, including several bearing the "I Love N.Y." logo.  Wagner Aff. ¶¶ 13-14; Abdurraheem Aff. ¶¶ 6, 9; Basinski Aff. Ex. G, Hearing Tr. 26:23-27:9.  Plaintiffs were working for different merchants who supplied them with merchandise, including the "I Love N.Y" t-shirts at issue.  Wagner Aff. ¶ 7; Abdurraheem Aff. ¶¶ 6, 8.

At some point between 2:00 p.m. and 3:00 p.m., Officer Foy, who was then a member of the NYPD Manhattan South Peddler Task Force, approached Abdurraheem's table, examined the "I Love N.Y." t-shirts he was selling, and arrested Abdurraheem for Trademark Counterfeiting in the Third Degree in violation of N.Y. Penal Law § 165.71.  Schuman Decl. Ex. C, Foy Dep. 15:8-14, 39:23-40:5, 65:15-66:19.  Shortly thereafter, Foy approached Wagner's table, examined the "I Love N.Y." t-shirts he was selling, and arrested Wagner for the same crime.  *Id.* 46:9-51:2, 54:6-11.  At the time of their arrests, both Plaintiffs were selling the "I Love N.Y." t-shirts at issue for approximately $5.00.  Basinski Aff. Ex. E, Wagner Dep. 54:4-6; Basinski Aff. Ex. F, Abdurraheem Dep. 163:10-14.

Officer Foy made the decision to arrest Plaintiffs after concluding that some of the "I Love N.Y." t-shirts that they were selling were counterfeit.  He based his conclusion on his observations that: (1) the shirts lacked certain hologram-like "hang tags," (2) the neck labels

lacked identifying information for an authorized licensee, and (3) the logos on the t-shirts were heat-pressed rather than screen-printed. Foy Dep. 49:16-51:2. Foy did not ask or determine whether Plaintiffs knew that the t-shirts they were selling were counterfeit. *Id.* 53:15-54:2, 68:17-69:2. Instead, Foy believed that the mere fact that Plaintiffs were selling counterfeit items was sufficient to establish probable cause for their arrests. *Id.* 106:18-107:9; *see also id.* 53:21-54:2.

Following their arrests, both Plaintiffs were driven in a police van to the precinct, where they were detained for approximately five hours. Wagner Dep. 66:17-23, 85:10-22; Defs.' 56.1 Stmt. ¶ 54. Wagner alleges that Foy refused to transport Wagner's wheelchair to the police station, which Defendants dispute.[1] Wagner Dep. 66:13-67:7, 77:2-77:25. As a result, Wagner was forced to walk a short distance and then to alternate standing and sitting in a crowded cell, which caused him back and leg pain. *Id.* 80:3-80:16, 85:23-86:16. Abdurraheem testified that when he was arrested, Foy did not allow him to take his cane, forcing him to walk to the police van and the precinct unassisted. Abdurraheem Dep. 178:9-179:13. Moreover, because he did not have his cane, when he was released from custody he had to "hop" to and from the subway, all of which exacerbated his knee condition and caused him pain. *Id.* 181:24-183:10.

On July 25, 2012, Wagner appeared at the Criminal Court of the City of New York and accepted an adjournment in contemplation of dismissal pursuant to N.Y. CPLR § 170.55 and on January 24, 2013, the criminal case against him for violating N.Y. Penal Law § 165.71 was dismissed. Wagner Dep. 90:15-20; Basinski Aff. Ex. I, Certificate of Disposition.

---

[1] Defendants' Rule 56.1 Statement asserts that Foy "had a vehicle available that was large enough to transport Mr. Wagner's wheelchair," Defs.' 56.1 Stmt. ¶ 24, and that Wagner's friend brought Wagner's wheelchair to the precinct when he was discharged. *Id.* ¶ 30. The implication of Defendants' Rule 56.1 statement is that Wagner voluntarily chose to leave his wheelchair in the custody of his friend. *See* Wagner Dep. 67:8-25. In his deposition, Wagner denied Defendants' counsel' suggestion that he opted to leave the wheelchair with his co-worker (who was working with him at the table); Wagner testified that he asked Foy to take the chair with him, but that Foy refused. *Id.* 67:8-25.

Abdurraheem, on the other hand, pled not guilty and moved to suppress the confiscated t-shirts.  Hearing Tr. 39:6-8.  At the suppression hearing, Abdurraheem argued that Foy did not have a founded suspicion to examine the t-shirts or probable cause to seize them.  *Id.* 39:10-41:11.  The state court found that a warrant was not required (because the goods were contraband in plain view) and denied Abdurraheem's motion to suppress.  *Id.* 43:4-25.[2]  After a bench trial, Abdurraheem was found not guilty of violating N.Y. Penal Law § 165.71 based on the judge's finding that the government had failed to prove that Abdurraheem acted with the requisite level of intent.  Basinski Aff. Ex. H, Trial Tr. 56:21-57:5.

## DISCUSSION

### I.    The Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine dispute as to any material fact, and the Court must "resolve all ambiguities, and draw all inferences, against the moving party." *Sista v. CDC Ixis N. America, Inc.,* 445 F.3d 161, 169 (2d Cir. 2006) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987)).

The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or

---

[2]    In passing, the judge stated on the record that "there was probable cause to believe that the defendant had committed the crime," but neither party moved or presented arguments to establish or refute probable cause for the arrest.  *Id.* 43:21-22.

4

unsubstantiated speculation." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) (citations and internal quotation marks omitted). Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista*, 445 F.3d at 169 (citation omitted). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Neither Party is Entitled to Summary Judgment On Plaintiffs' False Arrest Claims Pursuant to Section 1983

Both Plaintiffs and Defendants have moved for summary judgment on Plaintiffs' false arrest claims. Plaintiffs argue that the undisputed facts demonstrate that there was no probable cause for their arrest. Defendants argue the opposite. As is often the case when opposing parties cross move for summary judgment on the same issue, there are disputed facts that preclude the granting of summary judgment in favor of either side.

A claim brought pursuant to Section 1983 for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted). "[P]robable cause to arrest constitutes justification and is a complete defense to" such a claim. *Id.* at 852 (citation and internal quotations omitted). Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Provost v. City of Newburgh*, 262 F.3d 146, 156-57 (2d Cir. 2001) (citing *Weyant v. Okst*, 101 F.3d at 852). "An arresting officer need not have concrete proof of each element of a crime to establish probable cause for an arrest," *Brewton v. City of New York*, 550 F. Supp. 2d 355, 365 (E.D.N.Y. 2008), but where a specific level of intent is an element of the crime, an arresting officer must have "at

5

least some evidence" of the required intent to establish probable cause. *Id.* (citing *Rodis v. City and County of San Francisco*, 499 F.3d 1094, 1100 (9th Cir. 2007)); *see also Provost*, 262 F.3d at 157-58 (probable cause as to the intent element of disorderly conduct charge is necessary for probable cause to arrest).

> A person is guilty of Trademark Counterfeiting in the Third Degree when:
>
> *...with the intent to deceive or defraud* some other person or *with the intent to evade a lawful restriction* on the sale . . . or distribution of goods, he or she . . . sells, or offers for sale goods which bear a counterfeit trademark, or possesses a trademark knowing it to be counterfeit for the purpose of affixing it to any goods.

N.Y. Penal Law § 165.71 (emphasis added). The New York State Court of Appeals has stated that, with regard to trademark counterfeiting, the "intent" requirement presupposes knowledge that the goods are counterfeit. *See People v. Levy*, 15 N.Y.3d 510, 517 (2010) ("[I]t would be impossible to intend to evade a lawful restriction on the sale or distribution of goods without knowing that those goods were fake." (internal quotation mark omitted)). To establish that there was probable cause for the arrests, therefore, Defendants must show that Foy had probable cause to believe that Plaintiffs' conduct satisfied "all [] components" of the trademark counterfeiting statute, including the intent element, at the time of their arrest. *Provost*, 262 F.3d at 157-58.

In their Partial Motion for Summary Judgment, Plaintiffs argue that Foy lacked probable cause to arrest them because (1) Foy admitted in his deposition that he determined probable cause existed based solely on the fact that "[t]he items that they were selling were counterfeit," Foy Dep. 106:20-21; *see also id*. 53:15-54:5, 68:17-69:2, and (2) there were no objective facts and circumstances that could have given rise to probable cause as to the element of intent. Pls.' Mem. at 1. In particular, Plaintiffs note that, like many veterans with vending licenses, Plaintiffs were hired to sell merchandise provided by others. Pls.' Mem. at 3; Wagner Dep. 43:16-44:12; Abdurraheem Dep. 127:13-128:24. Plaintiffs did not know from where the merchandise

originated or whether the suppliers were legitimate. Pls.' Mem. at 3; Defs.' 56.1 Stmt. ¶¶ 11-13, 44, 45, 48. Moreover, unlike branded luxury goods that were at issue in many of the cases Defendants cite, there is no evidence suggesting that street vendors, or the public generally, are aware that the "I Love N.Y." logo is trademarked, or are able to distinguish between a genuine and counterfeit "I Love N.Y." t-shirt, whether by observing the quality, price, or source of sale.[3] Pls.' Mem. at 15-16. *Cf. Vuitton Et. Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071 (S.D.N.Y. 1979). Plaintiffs claim that, at the time of their arrest, they were unaware that the "I Love N.Y." logo was trademarked and had never received information or training regarding the trademark. Pls.' Mem. at 15-16 (citing Wagner Aff. ¶ 23, 28, 30; Abdurraheem Aff. ¶¶ 12, 21, 23). On the date of their arrest, Plaintiffs were selling the t-shirts at issue in an open and conspicuous manner, Trial Tr. 35:20-36:9, at a price consistent with that at which authentic "I Love N.Y." t-shirts are sold, *id.* 22:15-23:25, alongside other merchandise bearing the "I Love N.Y. logo" that was not found to be counterfeit, Foy Dep. 51:23-52:10; Hearing Tr. 26:23-27:12. There is no evidence that Plaintiffs behaved evasively in their interactions with Foy, and Defendants have pointed to no other basis for Foy to have believed that Plaintiffs were acting with intent to deceive, defraud or evade the law.

Notwithstanding Plaintiffs' argument to the contrary, the fact that Foy failed to consider Plaintiffs' intent before arresting them does not, by itself, preclude a finding that probable cause existed because the standard is objective, rather than subjective. *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (citations omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of

---

[3] Indeed, Sergeant Sonnenberg, who was the sergeant supervising Foy on the Manhattan South Peddler Task Force for five years preceding Plaintiffs' arrest, stated that he would not know how to tell the difference between a real and counterfeit "I Love N.Y." t-shirt. Sonnenberg Dep. 21:24-22:3, 63:10-63:15.

probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806, 812–813 (1996)).

In response to Plaintiffs' second argument, and in support of their own cross motion, Defendants point to a number of "facts and circumstances" that, they assert, militate in favor of finding that Foy had probable cause to make the arrest. Defendants note that: (1) "I Love N.Y." is a trademarked logo; (2) Plaintiffs were licensed vendors who had "access to information regarding the rules and regulations" governing counterfeit goods, Defs.' Mem. at 8; (3) Abdurraheem stated in his deposition that, at some point in time, he learned what company owned the "I Love N.Y." trademark, Abdurraheem Dep. 164:8-165:18; (4) Plaintiffs were selling the t-shirts in question for $5, which is at the low-end of pricing for authentic "I Love N.Y." t-shirts, Wagner Dep. 53:25-54:10; Abdurraheem Dep. 163:10-12; (5) Foy was able to determine that the t-shirts were fake by, *inter alia*, noting that they were heat-pressed rather than screen-printed and lacked tags with specific holograms and licensing numbers, Foy Dep. 49:16-51:2; and (6) the state court judge who adjudicated Abdurraheem's criminal case stated during the suppression hearing that there was probable cause to arrest Abdurraheem, Hearing Tr. 43:21-22.

Viewing the facts in the light most favorable to the Defendants, as the Court must in considering Plaintiffs' Motion for Partial Summary Judgment, the Court finds that Defendants have raised a genuine issue of material fact as to whether probable cause existed to arrest the Plaintiffs. The Court notes, however, that several of Defendants' arguments are not particularly persuasive. Although selling goods for substantially less than the normal retail price of authentic goods may give rise to the inference that the seller is aware that his goods are counterfeit, selling "I Love N.Y." t-shirts for $5 does not do so. At Abdurraheem's criminal trial, a representative from the trademark licensor testified that properly-licensed shirts can be produced for approximately $4, depending on various factors including the quality of the shirt, and therefore

could reasonably be sold for as little as $5.  Trial Tr. 22:15-23:25.  Plaintiffs' selling price does not, therefore, give rise to an inference of knowledge that the goods are counterfeit.  Defendants argue that Plaintiffs were or should have been aware of certain "rules and regulations" governing trademarks, but in support of their Motion for Summary Judgment they produced no evidence of such rules and regulations and did not explain how such materials were distributed, publicized or otherwise made available to vendors or the public.  Pls.' Opp. at 6.  The Court also makes little of the state court judge's statement regarding probable cause.  The purpose of the suppression hearing was to determine whether the confiscated t-shirts could be used as evidence at trial, not whether there was probable cause for Abdurraheem's arrest.  At the hearing, neither party presented evidence or arguments regarding probable cause for the arrest, and therefore the state court judge's dicta has no preclusive effect in this action.

      The Court does, however, find that Defendants have raised a genuine issue as to whether intent can be inferred from the fact that Plaintiffs were vendors licensed by the City who would have been more familiar with the "I Love N.Y." trademark than others, and that licensed "I Love N.Y." shirts have certain conspicuous authentication markers, such as being screen-printed rather than heat-pressed and carrying certain tags, of which Plaintiffs, as licensed vendors, were or should have been aware.  Defendants' evidence on these points, while weak, is sufficient to permit a reasonable juror to find in their favor.  Plaintiffs' Partial Motion for Summary Judgment is therefore denied.

      For all the reasons articulated by Plaintiffs, as noted above, Defendants' Motion for Summary Judgment on this point is also denied.  Based on the evidence presented, a reasonable juror could find that Foy lacked probable cause to arrest Plaintiffs because he had no indication that either man intended to deceive or defraud his customers or to evade the trademark laws.

### III.     Officer Foy is Not Entitled to Qualified Immunity

Even though Defendants are not entitled to summary judgment on Plaintiffs' false arrest claims, Foy would still be entitled to qualified immunity if the Court were to find that "(1) his conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 96 (2d Cir. 2007) (citations omitted).  Qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978).  As applied to the arrest context, the Second Circuit has held that, even without probable cause, an "arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 743 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).  As an affirmative defense, Defendants bear the burden of proving entitlement to qualified immunity.  *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations and internal quotations omitted).

Viewing the facts in the light most favorable to Plaintiffs, *see Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)), a reasonable juror might conclude that Foy's actions were objectively unreasonable and that no police officer could have reasonably believed that probable cause existed.  For example, a reasonable juror could accept Plaintiffs' testimony that, at the time of their arrests, they did not know, and had no reason to know, that the ubiquitous "I Love N.Y." logo was trademarked.  A reasonable juror

could further believe that the authentication markers used by Foy to identify counterfeit t-shirts were not known to Plaintiffs, were not publicly disclosed by the NYPD, and were not otherwise apparent or discernable to the public.  Although Defendants dispute several of these facts, "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas*, 165 F.3d at 143 (2d Cir. 1999) (citation omitted); *see also Lennon*, 66 F.3d at 420 ("[I]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment.").

### IV. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiffs' Claims Under the ADA and Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. § 12132.  The language in § 504 of the Rehabilitation Act, 29 U.S.C. § 794, is "substantially similar," and therefore "the same analysis applies to those claims." *Taylor v. Schaffer*, No. 1:14-CV-123-JGM, 2015 WL 541058, at *6 (D. Vt. Feb. 10, 2015) (citing *Hargrave v. Vermont,* 340 F.3d 27, 35 (2d Cir. 2003)).  In the context of arrests, courts have recognized claims alleging a "'failure to provide reasonable accommodations,' where police execute a proper arrest but 'fail to reasonably accommodate [a plaintiff's] disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees.'" *Taylor*, 2015 WL 541058, at *6 (quoting *Ryan v. Vt. State Police*, 667 F. Supp. 2d 378, 387 (D. Vt. 2009)).

Plaintiffs argue that they were injured and that their medical conditions were exacerbated because Foy refused to permit them to bring their medically-necessary devices with them to the

11

precinct and otherwise failed to accommodate their disabilities during their arrest and detention. Wagner Dep. 66:24-67:7, 70:15-21, 77:2-14, 78:5-78:12, 80:3-80:16, 85:23-86:16; Abdurraheem Dep. 178:9-179:13, 181:24-183:10. Defendants, on the other hand, either deny or disclaim knowledge as to whether Foy refused to transport Plaintiffs' medically-necessary devices with them to the precinct. Defs.' 56.1 Stmt. ¶¶ 24, 30; Foy Dep. 70:10-18, 120:17-121:7. Defendants further argue that Plaintiffs were perfectly capable of walking because they were standing at their vending tables when Foy arrested them, Defs.' 56.1 Stmt. ¶¶ 16, 18-19, 32, 49; Wagner Dep. 53:17-22; Abdurraheem Dep. 162:2-12, and they were physically able to walk the short distance from their tables to the police van, and from the police van to the precinct, Defs.' 56.1 Stmt. ¶¶ 16-17, 51; Wagner Dep. 80:3-16, 83:4-13; Abdurraheem Dep. 165:19-166:2. Because neither Plaintiff saw a doctor after being arrested, Wagner Dep. 98:1-23; Abdurraheem Dep. 179:14-16, Defendants contend that even if there were a failure to accommodate, neither was injured as a result. Defs.' 56.1 Stmt. ¶¶ 32, 56.

Because material questions of fact and credibility exist such that a reasonable juror could find that Plaintiffs were denied reasonable accommodations for their disabilities and were injured by that failure to accommodate, Defendants' Motion for Summary Judgment on Plaintiffs' ADA and Rehabilitation Act claims is denied.[4] Defendants' Motion is granted, however, with respect to Plaintiffs' ADA and Rehabilitation claims against Foy in his individual capacity, because neither of these statutes provides for "individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

---

[4] For example, Defendants contend that Abdurraheem's testimony that he was injured while hopping home without his cane is not credible because, "with knees as bad as Mr. Abdurraheem claims," it would "not be possible" for him to hop home. Defs.' Mem. at 16. This is a quintessential credibility question, which the jury, not the Court, must decide.

### V. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiffs' False Arrest-Related *Monell* Claims

Defendants move to dismiss Plaintiffs' *Monell* claims, arguing that Plaintiffs cannot establish that they suffered any constitutional deprivation as a result of a municipal policy or practice. Defs.' Mem. at 20-21. Defendants correctly note that Plaintiffs' Amended Complaint includes few facts in support of their *Monell* claims, but, with the benefit of discovery, Plaintiffs have marshalled sufficient evidence to defeat Defendants' summary judgment motion with respect to their *Monell* claims based on their arrests. Plaintiffs' *Monell* claims based on Defendants' failure to accommodate, however, are not supported and are subject to dismissal.

It is well-established that a municipality may be liable under § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Municipalities are responsible only for "their *own* illegal acts," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original), but they are not vicariously liable for their employees' acts under § 1983, *id.* (citation omitted). Therefore, "to establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick*, 131 S.Ct. at 1359)). An "official municipal policy" includes the "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359 (citations omitted). A municipality's "failure to train its employees" may also constitute an official "policy or custom" if it amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (citations omitted). Deliberate indifference, which the

13

Supreme Court has described as a "stringent standard of fault," may be inferred when city policymakers choose to retain a training program after being put "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* at 1360 (citations omitted); *see also id.* ("The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

In support of their false arrest-based *Monell* claims, Plaintiffs argue that the City has an official policy of arresting street vendors for trademark counterfeiting without probable cause as to the intent element of the offense. Pls.' Opp. at 17. Plaintiffs argue that (1) Foy acted as a "policymaking official" for *Monell* purposes; (2) the City's policy of arresting vendors for trademark counterfeiting without probable cause as to intent is a practice that is so persistent and widespread so as to have the force of law; and (3) the City demonstrated "deliberate indifference" to the rights of street vendors in failing to train task force officers on all of the required elements of trademark counterfeiting. *Id.* at 17-20.

With respect to their first argument, Plaintiffs cite to no case, and the Court is aware of none, in which an arresting police officer, regardless of his or her level of seniority or expertise, has been found to be acting in the capacity of a policymaker under *Monell*. *Cf. Pembaur*, 475 U.S. at 483 ("[M]unicipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985))).

Plaintiffs do, however, allege facts sufficient to defeat summary judgment on the grounds that the City has a "persistent and widespread" practice of arresting vendors for trademark

14

counterfeiting without consideration of the intent element, and that the City has demonstrated "deliberate indifference" to the rights of street vendors by failing properly to train the police officers assigned to the Manhattan South Peddler Task Force. Plaintiffs have established that while assigned to the task force, Foy participated in over 50 training sessions on the enforcement of trademark counterfeiting laws, Foy Dep. 21:8-22:4, and that "for a good deal of time," Foy was the officer in charge of organizing such training. *Id.* 22:10-21; *see also* Sonnenberg Dep. 71:24-72:1 ("[Foy] was in charge of our department's training, the Peddler Rules and Regulations."). Foy's supervisor, Sergeant Sonnenberg, stated that he and other officers looked to Foy for expertise regarding trademark issues, Sonnenberg Dep. 75:2-76:14, and that Foy was responsible for "keeping [the other officers] abreast of the new laws when it comes to peddlers," *id.* 73:6-11.

On February 24, 2012, approximately four months before Plaintiffs' arrest, local politicians including a New York State Senator, New York City Councilmember, and Scott Stringer, then-Manhattan Borough President, convened a meeting among Chinatown business owners and members of the Manhattan South Peddler Task Force to discuss the problem of merchants being arrested for trademark counterfeiting violations for selling "Angry Birds" products and other items without knowing they were counterfeit. Basinski Aff. Ex. J, Aline Reynolds, "Angry Birds" Raid Leads to Broader Discussion on Counterfeit Goods, *Downtown Express* (February 24, 2012), http://www.downtownexpress.com/2012/02/29/angry-birds-raid-leads-to-broader-discussion-on-counterfeit-goods/. At the meeting, several merchants complained that they had been arrested for selling items that they did not know were counterfeit, including "I Love N.Y." t-shirts and magnets; Councilmember Chin "urged the NYPD to do a better job of notifying merchants of widespread counterfeit goods so they can more readily avoid buying them." *Id.* In connection with the meeting, Foy spoke to the press on behalf of the

NYPD, stating: "These particular arrests are based on observation . . . and by that time, the crime has been committed already. . . . Unfortunately, the fact that you don't know an item you're selling is counterfeit is not a defense or excuse to the Police Department." *Id.* Although Foy's hearsay statements are not admissible evidence, Sergeant Sonnenberg essentially stated the same thing in his deposition. When asked about the elements of trademark counterfeiting, he indicated that the crime was committed by selling counterfeit goods. When asked whether the seller had to know the goods were counterfeit, he answered that vendors are "responsible to know what they're selling." Sonnenberg Dep. 65:15-16.

      Whether Plaintiffs will ultimately be able to prove their *Monell* claims is a question for another day. At this stage, in light of the fact that both the arresting officer, who is also a trademark counterfeiting training officer, and his supervisor – both long time members of the Peddler Task Force – appear to believe that intent is not an element of the crime, they have at least raised a genuine issue of material fact as to whether the City has a policy of arresting vendors for counterfeiting without determining that there is probable cause to believe that the vendor has the requisite *mens rea*, and whether the City failed properly to train task force officers after being put on notice that gaps in their training would likely result in constitutional violations.

      Plaintiffs have not, however, met their burden with respect to their *Monell* claims based on Defendants' alleged failure to accommodate Plaintiffs' disabilities. Apart from the circumstances of their own arrests, Plaintiffs' only evidence in this regard is Foy's statement that he is not aware of, or does not recall, any policies or procedures regarding the arrest of individuals with disabilities. Foy Dep. 73:24-74:24. This is simply insufficient to create a question of fact for trial. It is well established that plaintiffs must establish that the officer's shortcomings were the result of a "faulty training program," rather than the result of "isolated

16

misconduct by a single actor," or other unrelated circumstances. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton*, 489 U.S. at 391). Such a showing requires actual evidence of the relevant training program. *Farrow v. City of Syracuse*, No. 5:12-CV-1401(LEK)(ATB), 2014 WL 1311903, at *8 (N.D.N.Y. Mar. 31, 2014) (citing *Amnesty Am.*, 361 F. 3d at 130-31). Because Plaintiffs have provided no evidence that would rule out the possibility that Foy merely acted negligently or with intentional disregard of his training, Defendants' Motion for Summary Judgment is granted on this point. *See Amnesty Am.*, 361 F.3d at 130-31.

## VI. Plaintiffs Concede that Their Claims Against Kelly and Schriro Must Be Dismissed

Plaintiffs concede that they have not met their burden in pleading any claims against Defendants Kelly and Schriro. Pls.' Opp. at 1 n.1. Plaintiffs' claims against Kelly and Schriro are therefore dismissed.

## VII. Plaintiffs' Claims for Injunctive Relief Are Dismissed on Standing Grounds

Defendants move for summary judgment on the basis that Plaintiffs lack standing to assert their claims for injunctive relief under Title II and Title III of the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. To satisfy constitutional standing requirements, a plaintiff must prove: "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (emphasis omitted)).

In the arrest context, the Second Circuit has held that a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983)). In doing so, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future. . . . [A]n abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Shain*, 356 F.3d at 215 (internal citations, alterations and quotations omitted).

In *Lyons,* the Supreme Court held that the plaintiff, who was placed in a chokehold during a minor traffic stop, lacked standing to seek prospective injunctive relief barring Los Angeles police officers from using chokeholds, even though his past injury supplied a predicate for compensatory damages. 461 U.S. at 105-06. The Supreme Court ultimately concluded that the plaintiff lacked standing because there was insufficient "likelihood that he will again be wronged in a similar way." *Id.* at 11. Relying on this language, the Second Circuit in *Shain* held that a plaintiff lacked standing to seek permanent injunctive relief barring a blanket strip search policy for all misdemeanor arrestees even though he had himself been subject to the policy after a misdemeanor arrest and overnight detention. 356 F.3d at 213–14; *see also Williams v. City of New York*, 34 F. Supp. 3d 292, 295-96 (S.D.N.Y. 2014) (hearing-impaired arrestee failed to establish that she was likely to suffer future harm, for standing purposes, as a result of the NYPD's failure to provide sign language interpreters upon arrest or incarceration).

Here, as in *Shain* and *Lyons*, Plaintiffs cannot demonstrate a real and immediate threat of future injury under the ADA and Rehabilitation Act. As licensed vendors who may continue to sell "I Love N.Y." t-shirts, Plaintiffs might have standing to seek injunctive relief relative to their false arrest claims. *See Knife Rights, Inc. v. Vance*, No. 13-4840-CV, 2015 WL 5559751, at *5

(2d Cir. Sept. 22, 2015) (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014)).  In contrast, Plaintiffs' claims for injunctive relief under the ADA and Rehabilitation Act, which are predicated on the possibility that Plaintiffs might be re-arrested and deprived of their medically-necessary devices during the period of their arrest and detention, are simply "too speculative and conjectural to supply a predicate for prospective injunctive relief."  *Shain*, 356 F.3d at 216; *see also MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d at 601 (S.D.N.Y. 2011) (finding no standing "given how speculative it is that MacIssac will be stopped, arrested, and subjected to the use of a Taser stun gun yet again").  Plaintiffs' claims for injunctive relief are therefore dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Partial Motion for Summary Judgment is DENIED.  Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiffs' ADA and Rehabilitation Act claims against Defendant Foy in his individual capacity.  Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims for injunctive relief under the ADA and Rehabilitation Act.  Defendants' Motion for Summary Judgment is further GRANTED with respect to Plaintiffs' claims against Defendants Kelly and Schriro, and with respect to Plaintiffs' *Monell* claims based on Defendants' alleged failure to accommodate Plaintiffs' disabilities.  Defendants' Motion for Summary Judgment is otherwise DENIED in all respects.  The Clerk of Court is respectfully requested to close the open motions at docket numbers 38 and 42.

The parties shall next appear before the Court for a status conference on October 23, 2015 at 10:00 a.m.  In advance of the conference, the parties shall confer regarding their

Case 1:14-cv-02521-VEC   Document 60   Filed 09/28/15   Page 20 of 20

availability for trial and shall be prepared to discuss mutually-agreeable trial dates at the conference.

**SO ORDERED.**

**Date:  September 28, 2015**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**